Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
**PERKINS COIE LLP**
11452 El Camino Real, Suite 300
San Diego, California 92130-2080
Telephone:    858.720.5721
Facsimile:  858.720.5799

Theresa H. Nguyen, Bar No. 284581
RNguyen@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOLOGY INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>VIA LICENSING CORPORATION,<br><br>        Defendant. | Case No. 3:22-cv-1405<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Synology Inc. ("Synology") files this Complaint for Declaratory Judgment and for Breach of the Implied Covenant of Good Faith and Fair Dealing against Defendant Via Licensing Corporation ("Via Licensing"), stating as follows:

## I. INTRODUCTION

1.      Synology makes network-attached storage ("NAS") devices.  In 2013, Synology approached Via Licensing for a license to certain patents related to the AAC audio codec, which is included in a software package that Synology includes in the operating system for its NAS products. This operating system is not installed when Synology ships the NAS products.  The AAC codec is disabled at the time a Synology NAS product is sold and cannot be enabled without authorization

from Synology.  The parties agreed that license fees would be calculated based only on the number of NAS units on which a user actually activated the AAC codec.  Since 2013, Synology has reported to Via Licensing the number of activated units sold and has paid Via Licensing royalties based on activated units.  Via Licensing retained Deloitte as its agent to conduct a routine audit of Synology's royalty reporting in 2016, and no material issues were noted.  Via Licensing reviewed and approved of Deloitte's audit report, which described Synology's activation procedure and reporting methodology.  Synology made payments under the license based on activations, and Via Licensing accepted those payments.  Synology and Via Licensing renewed the patent license agreement in 2018.

2.      In 2021, Via Licensing conducted a second routine audit of Synology's royalty reporting.  Following that audit, Via Licensing now claims—for the first time in eight years of royalty reports and payments—that under the express terms of the license agreement, it is owed over $4 million in royalties for products on which the AAC codec has never been activated.  Via Licensing's interpretation of the terms of the agreement and Synology's performance thereunder are incorrect.  Moreover, had Via Licensing disputed Synology's activation-based methodology at any point in the prior eight years, Synology could have made a simple technical change that would have avoided royalty obligations for those units.  Instead, Via Licensing accepted eight years of royalty payments under the activation-based methodology and remained silent while Synology's purported obligations accrued.  Now that it is too late to make that technical change to past NAS units sold, Via Licensing demands royalties for the non-activated units.

3.      Synology files this Complaint for Declaratory Judgment to request the Court's determination that Via Licensing is not owed any additional royalties under the patent license, and/or if any payments related to non-activated units were at one time due, Via Licensing has waived any right it had under the patent license agreement to such payments.  Synology further seeks a determination that it is not in breach of the agreement between Synology and Via Licensing.  Synology also seeks damages based on Via Licensing's bad-faith conduct.

## II.  PARTIES

4.      Plaintiff Synology Inc. is a Taiwanese (Republic of China) corporation with its principal place of business at 9F., No.1, Yuandong Rd., Banqiao Dist., New Taipei City 220632, Taiwan.

5.      Defendant Via Licensing is a patent licensing entity incorporated in the State of Delaware with its principal place of business at 1275 Market Street, San Francisco, California 94103.

## III.  JURISDICTION AND VENUE

6.      This Court has jurisdiction of this action under 28 U.S.C. § 1332.  There is complete diversity of citizenship between the parties.  Plaintiff Synology is a citizen of Taiwan, where it is incorporated and headquartered.  Defendant Via Licensing is a citizen of the State of Delaware, where it is incorporated, and of the State of California, where it is headquartered.  In addition, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Via Licensing because Via Licensing maintains a principal place of business in San Francisco, San Francisco County, California, and has purposefully availed itself of the privilege of conducting business in this District such that it should reasonably and fairly anticipate being brought into court in this District.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (3).  Via Licensing is the sole defendant in this action and is a resident of the State of California and of this District, having has its principal place of business at 1275 Market Street, San Francisco, California 94103.

9.      Under the Dispute Resolution provisions of the AAC Patent License Agreement ("AAC PLA" or "Agreement"), Via Licensing has consented to the jurisdiction of and waived any venue objections against this Court in any litigation arising out of the AAC PLA.

## IV.  BACKGROUND FACTS

10.      Synology designs, develops, and manufactures network storage and communications devices, including the Synology DiskStation, RackStation, and FlashStation product lines of network-attached storage ("NAS") devices.  Synology also designs and develops the Synology DiskStation Manager ("DSM"), a Linux-based operating system that can run on the

DiskStation and other Synology NAS products.  DSM enables certain functionality on Synology NAS products, including file sharing, centralized backup, virtual storage, multimedia streaming. When shipped to the consumer, Synology NAS products do not contain DSM software.  Also, when shipped, the NAS devices do not contain the Advanced Audio Coding audio codec ("AAC codec"). Synology makes DSM available for download at no additional cost to users who own a Synology NAS product, though some NAS devices may be used by purchasers with other operating systems. After years of research and development, Synology launched the first version of the DiskStation and DSM in March 2004.

11.     In or around May 2013, and prior to its release of DSM version 4.3, Synology initiated contact with Via Licensing to obtain a license to the AAC codec.

12.     On or about September 9, 2013, Synology and Via Licensing entered into the AAC PLA, effective September 9, 2013 with a five-year term.  Under the AAC PLA, Via Licensing granted Synology a license to certain "Essential AAC Patents" necessary to practice certain standards for the coding of audio information.  The AAC PLA bases its definition of a "Licensed Product" on products that directly or indirectly infringe a Licensed Patent. .

13.     Synology DSM includes FFmpeg, an open-source software package that incorporates an AAC codec.  Synology added an additional software layer to DSM that disables the AAC codec, blocking the consumer from using the AAC codec without authorization and activation from Synology.  The first time that a consumer uses functionality that requires coding or decoding audio information using the AAC codec, the Synology NAS device sends a request to Synology's servers.  Synology sends a token to the device to enable the AAC codec and records the serial number of the requesting device and its record of activation.

14.     Since the parties entered into the AAC PLA in September 2013, Synology has kept records of consumer activations of the AAC codec on its NAS products and reported the quantity of Synology NAS units that have activated the AAC codec ("Activated Units") to Via Licensing in written reports submitted to Via Licensing at the close of each calendar quarter.  Following each quarterly report, Synology has submitted payments to Via Licensing the license fee owed under the Agreement for all Activated Units.  Via Licensing accepted those payments.  Since executing the

COMPLAINT FOR DECLARATORY JUDGMENT

AAC PLA in September 2013 and as of the date of this Complaint, Synology has submitted 30 quarterly reports and 30 quarterly royalty payments to Via Licensing.

15.     Via Licensing was aware of and agreed to Synology's activation-based reporting methodology since at least September 2013.

16.     In or around September 2016, Via Licensing retained Deloitte Touche Tohmatsu Limited ("Deloitte") as its agent to perform an audit of Synology's compliance with the terms of the AAC PLA and the accuracy of the quarterly reports that Synology submitted to Via Licensing. According to Deloitte's website, "Deloitte provides industry-leading audit and assurance, tax and legal, consulting, financial advisory, and risk advisory services to nearly 90% of the Fortune Global 500 and thousands of private companies." *See* About Us, https://www2.deloitte.com/global/en/pages/about-deloitte/articles/about-deloitte.html.  Deloitte is one of the largest professional services firms in the world and employs over 345,000 professionals globally. *See id*.

17.     On September 23, 2016, Synology provided Deloitte with Synology's royalty reporting methodology.  Synology explained that its NAS products are sold without the AAC codec. Synology further explained that its DSM software contains a disabled AAC encoder/decoder that a user cannot use without going through a specific, documented activation process.  Synology further explained that when a consumer requires use of the AAC codec, the device sends an activation request to Synology's servers, which record the device serial number and time of activation for reporting purposes.  Synology also provided Deloitte with a diagram illustrating the activation procedure.  Synology offered to provide Deloitte with additional details about the activation procedure and offered to assist with Deloitte's testing and verification of the activation mechanism.

18.     Prior to and/or during Deloitte's audit, Deloitte communicated with Via Licensing about Synology's activation procedure and activation-based reporting methodology, including confirming Via Licensing's approval of Synology's reporting methodology.

19.     Deloitte acted as Via Licensing's agent in auditing Synology's compliance with the AAC PLA.  Deloitte was compensated solely by Via Licensing and, upon information and belief, Via Licensing retained Deloitte and wholly delineated Deloitte's audit instructions.  Deloitte's knowledge is imputed to Via even if Deloitte failed to communicate the information to Via.

20.    On November 15, 2016, representatives from Deloitte, Synology, and Via Licensing participated in a telephone conference to discuss the results of the audit.  On that day and prior to the telephone conference, Deloitte provided Via Licensing's representatives, including Khajal Cooper, the Head of Compliance for Via Licensing, with a draft of Deloitte's report on its audit of the accuracy of Synology's royalty reporting during the period of September 9, 2013 to June 30, 2016.  The first page of the audit report states:  "Synology sells a product classified under product model, SYNOLOGYDISKSTATION.  When the product is delivered to a customer it is unable to decode AAC, however, there is an activation process, which then enables the functionality of the product to decode AAC.  Therefore, this balance represents the number of activations to the product from September 9, 2013 to June 30, 2016."  The audit found a variance of less than 1% between reported units and actual sales, amounting to total royalty payment of $5,208 due, including accrued interest, for the approximately three-year audit period.  Via Licensing did not communicate any concerns related to Synology's activation procedure or activation-based reporting methodology at the time of Deloitte's audit.  Synology made payment of the $5,208 and Via Licensing accepted this payment.

21.    Synology relied on Via Licensing's acceptance of the results of Deloitte's audit and continued to maintain its token, activation, and serial number recording process, and to report royalty payments based on the activation mechanism.

22.    In or around September 2018, Synology and Via Licensing renewed the AAC PLA for an additional five-year term.  Prior to renewing the AAC PLA, Synology and Via discussed the reasonableness of the license fees that would be due under the Agreement.  Via Licensing did not communicate any concerns related to Synology's activation procedure or activation-based reporting methodology prior to renewing the Agreement.

23.    In or around June 2021, Via Licensing retained MMF Consulting Group, Inc. ("MMF"), a contract compliance services firm, to perform a second audit of Synology's quarterly reports.  In July 2021, Synology provided MMF with Synology's activation procedure and activation-based reporting methodology.  MMF conducted its audit and provided Synology with a draft audit report in October 2021.  MMF's audit report took the position that all NAS products that

1    Synology sold, whether or not a user had activated the AAC codec, should have been reported as

2    licensed products under the AAC PLA.  Synology explained to MMF that in 2013, Synology and

3    Via had agreed that no license fees would be due for devices on which the AAC codec was disabled

4    and had approved the activation procedure and reporting based on Activated Units.

5          24.    In November 2021, MMF, Synology, and Via Licensing participated in a telephone

6    conference to discuss the results of MMF's audit and the draft audit report.  Mr. Cooper, Via

7    Licensing's Head of Compliance who had reviewed and approved Deloitte's audit report in 2016,

8    represented Via Licensing.  Despite Via Licensing's prior agreement to and approval of Synology's

9    activation-based reporting methodology, despite its acceptance of the royalty fees paid by

10   Synology, and despite having failed to raise any concerns related to that methodology following

11   Deloitte's audit or at any time during the prior eight years, Via Licensing—for the first time—

12   argued that it was owed license fees for all Synology NAS products sold, regardless of whether or

13   not the AAC codec was activated.

14         25.    As Synology explained, the AAC PLA did not require Synology to pay royalties on

15   anything other than activations, but even if the AAC PLA did so require (it does not), Via Licensing

16   had expressly and/or implicitly agreed to Synology's activation-based reporting methodology as an

17   acceptable basis for calculating royalty-bearing units under the AAC PLA.  Through Via

18   Licensing's eight years of silence and acquiescence, including during and after Deloitte's audit in

19   2016 and during the parties' negotiations over renewal of the AAC PLA in 2018, Via Licensing

20   has waived any right under the express terms of the AAC PLA to royalty payments for non-

21   activated units.

22         26.    Had Via Licensing disputed Synology's reporting methodology or claimed royalties

23   against the non-activated units in 2016, in 2018, or any other point prior to November 2021,

24   Synology would have implemented a simple technical design change that would have avoided

25   triggering a royalty obligation for non-activated units.  For example, Synology would have omitted

26   the AAC codec from DSM, and instead triggered a download of the codec as needed by the user.

27   Synology relied on Via Licensing's acceptance of Synology's royalty payments and its silence

28   following the 2016 audit as a ratification of the activation methodology and made no changes to

the mechanism by which users accessed the AAC codec.  Had Via Licensing raised the issue in 2016, Synology would have made the appropriate design changes to avoid incurring royalty obligations on NAS units that never make use of the AAC codec.

27.    On December 9, 2021, Via Licensing stated that Synology owed Via Licensing $4,369,788.48, which included license fees for non-activated units and accrued interest for the audit period of July 1, 2016 through June 30, 2021, along with the cost of the audit.  Since then, Via Licensing has continued to insist that, despite its years of acceptance of the activation-based reporting methodology, under the express terms of the AAC PLA, Via Licensing is now owed license fees for non-activated units sold between 2016 and 2021.  On February 18, 2022, Via Licensing further threatened Synology by claiming Synology was in breach of the AAC PLA, further threatened to inform third parties that Synology was in breach, and threatened to "escalat[e]" the dispute in additional unspecified ways.

## V.  FIRST CAUSE OF ACTION

### (Declaratory Judgment—No Breach of Contract)

28.    Plaintiff Synology realleges and incorporates by reference as though fully set forth herein the allegations of Paragraphs 1 through 27, inclusive, of this Complaint.

29.    This case involves a dispute as to the contractual rights of the parties under the AAC PLA.

30.    Under Section 1060 of the California Code of Civil Procedure, "[a]ny person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another … may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action … ask[ing] for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties … .  The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment."  This action is also governed by 28 U.S.C. § 2202, regarding declaratory relief.

31.    There is an actual controversy concerning the rights of the parties in the AAC PLA:

(a)    Plaintiff Synology contends that its payment of royalties based on

activations of the AAC codec complies with the terms of the AAC PLA.  Synology further contends that it does not owe royalties under the AAC PLA for products that ship without the AAC codec.  Via Licensing has disputed and continues to dispute both of these Synology contentions and Via Licensing has alleged breach and threatened other "escalation" based on its disagreement with Synology.

(b)     Via Licensing contends that Synology is liable to Via Licensing for damages in an amount of $4,369,788, a figure which Via Licensing claims is now due as a result of underreporting units Via Licensing alleges are subject to the AAC PLA for the five-year period of July 1, 2016 through June 30, 2021.  Synology disputes this amount is due under the AAC PLA.

32.     Given Via Licensing's implicit threat of legal action, its threat of "escalation," its threat to notify third parties of an alleged breach of the AAC PLA, and Via Licensing's unreasonable monetary demands, as well as its erroneous position regarding interpretation of the AAC PLA and its waiver of payments under the AAC PLA, there is a realistic, imminent danger that Synology will suffer a distinct and palpable injury that is real and not conjectural because Via Licensing seeks damages from Synology based on Via Licensing's erroneous position regarding the parties' rights under the AAC PLA.  Synology has a reasonable apprehension that Via Licensing will file suit against Synology in an attempt to claim damages.  A declaration by this Court at this time will serve to resolve the contractual dispute and to confirm the respective rights and obligations under the AAC PLA.

## VI.  <u>SECOND CAUSE OF ACTION</u>

### (Declaratory Judgment—Waiver)

33.     Plaintiff Synology realleges and incorporates by reference as though fully set forth herein the allegations of Paragraphs 1 through 32, inclusive, of this Complaint.

34.     This case involves a dispute as to the contractual rights of the parties under the AAC PLA.

35.     There is an actual controversy concerning the rights of the parties in the AAC PLA:

(a)     Plaintiff Synology contends that Defendant Via Licensing knew in August 2013 that Synology's unit count would be based on actual usage of the AAC codec and knew by

COMPLAINT FOR DECLARATORY JUDGMENT

no later than October 2016 that Synology's reporting was based on user activations of the AAC codec; Via Licensing accepted eight years of royalty reports and payments based on Activated Units alone and did not raise any issue related to non-activated units at any point prior to November 2021; Via Licensing's course of conduct led to a reasonable inference that Via Licensing had consented to limiting royalty-bearing units under the AAC PLA to Activated Units; Synology materially relied on Via Licensing's conduct and did not make any technical changes to its activation mechanism; and Via Licensing has waived and Synology is not liable to Via Licensing for royalty payments based on non-activated units purportedly due under the express terms of the Agreement.  Defendant Via Licensing disputes all of these contentions.

(b)     Via Licensing contends that Synology is liable to Via Licensing for damages in an amount of $4,369,788, a figure which Via Licensing claims is now due as a result of underreporting of units Via Licensing alleges are subject to the AAC PLA for the five-year period of July 1, 2016 through June 30, 2021.  Synology disputes this amount is due under the AAC PLA.

36.     Given Via Licensing's implicit threat of legal action, its threat of "escalation," its threat to notify third parties of an alleged breach of the AAC PLA, and Via Licensing's unreasonable monetary demands, as well as its erroneous position regarding interpretation of the AAC PLA and its waiver of payments under the AAC PLA, there is a realistic, imminent danger that Synology will suffer a distinct and palpable injury that is real and not conjectural because Via Licensing seeks damages from Synology based on Via Licensing's erroneous position regarding the parties' rights under the AAC PLA.  Synology has a reasonable apprehension that Via Licensing will file suit against Synology in an attempt to claim damages.  A declaration by this Court at this time will serve to resolve the contractual dispute and to confirm the respective rights and obligations under the AAC PLA.

## VII.  **THIRD CAUSE OF ACTION**

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

37.     Plaintiff Synology realleges and incorporates by reference as though fully set forth herein the allegations of Paragraphs 1 through 36, inclusive, of this Complaint.

COMPLAINT FOR DECLARATORY JUDGMENT

38. The AAC PLA is a valid contract, supported by consideration under California Civil Code Sections 1550, *et seq.* The AAC PLA contains an implied covenant of good faith and fair dealing.

39. Synology has fully and/or substantially performed its duties under the AAC PLA.

40. Via Licensing has breached its good-faith obligations under the AAC PLA. Via Licensing misled Synology by accepting royalty reports and payments under the activation-based reporting methodology for eight years, and by continuing to accept reports and corresponding payments after Deloitte's 2016 audit and by renewing the AAC PLA in 2018, without once raising any concern or issue with the basis for Synology's reporting of royalty-bearing units or purported deficiency in payments. Via Licensing's conduct created the reasonable belief that Via Licensing's interpretation of the scope of Licensed Products under the AAC PLA was consistent with Synology's interpretation, and/or that Via Licensing intended to waive any claim to royalties for products on which the AAC codec is not actually activated.

41. After years of unambiguous conduct, Via Licensing is now wrongfully attempting to assert a claim for royalties due on five years of past sales under a new interpretation of the Agreement and wrongfully alleging that Synology has breached the AAC PLA. Via Licensing's position is unreasonable, unfounded, and constitutes bad faith. Via Licensing's actions deny Synology the benefits of the parties' agreement under the AAC PLA, including a license to Synology to patents covered by the AAC PLA.

42. As a direct and proximate result of Via Licensing's conduct, Synology made no modifications to its activation mechanism, when a simple and inexpensive technical change at the outset was all that would have been required to avoid Via Licensing's additional royalty claim. Synology has suffered and will continue to suffer damages, including in the form of increased legal and other fees.

## VIII. <u>PRAYER FOR RELIEF</u>

Synology respectfully requests that the Court enter judgment in its favor and against Via Licensing as follows:

1.     Finding that pursuant to the AAC Patent License Agreement, royalties are not due on any Synology products that ship without the AAC codec, and a further finding that pursuant to the AAC Patent License Agreement, royalties are only due on products on which the AAC codec is actually activated;

2.     Finding that Via Licensing has waived any right to royalty payments from Synology under the AAC Patent License Agreement based on non-activated products;

3.     Finding that Via Licensing breached the implied covenant of good faith and fair dealing under the AAC Patent License Agreement;

4.     For attorneys' fees, costs, and expenses incurred in the prosecution of this action;

5.     For preliminary and permanent injunctive relief against Via Licensing and its officers, directors, employees, agents, and anyone acting in concert with them, from claiming or stating Synology is in breach of the AAC Patent License Agreement; and

6.     For such other and further relief as the Court deems just and proper.

## IX.  JURY TRIAL DEMAND

Plaintiff requests a trial by jury for all claims so triable.

Dated: March 4, 2022

**PERKINS COIE LLP**

By: */s/ Matthew C. Bernstein*
Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, California 92130-2080
Telephone:    858.720.5721
Facsimile:    858.720.5799

Theresa H. Nguyen, Bar No. 284581
RNguyen@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone:    206.359.8000
Facsimile:  206.359.9000

COMPLAINT FOR DECLARATORY JUDGMENT